IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

FURNITURE ENTERPRISES OF
ALASKA, INC.,

               Plaintiff,

    vs.

JO-ANN STORES, LLC,

               Defendant.

Case No. 3:20-cv-00272-JMK

**ORDER GRANTING
PARTIAL SUMMARY JUDGMENT**

      Before the Court is Defendant and Counterclaimant Jo-Ann Stores, LLC's

("Jo-Ann") Motion for Partial Summary Judgment[1] and Plaintiff and Counter Defendant

Furniture Enterprises of Alaska, Inc.'s ("FEA") Cross Motion for Partial Summary

Judgment.[2]  Both motions are fully briefed.[3]  Oral argument was not requested and is

unnecessary to the Court's decision.

      For the reasons below, Jo-Ann's Motion for Partial Summary Judgment is

GRANTED and FEA's Cross Motion for Partial Summary Judgment is DENIED.  Under

---

[1] Docket 22.
[2] Docket 26.
[3] *See* Docket 25; Docket 27; Docket 30; Docket 31; Docket 32.  FEA filed its
"Memorandum in Opposition to Jo-Ann's Motion for Partial Summary Judgment and in Support
of Cross-Motion for Partial Summary Judgment" at both Docket 25 and Docket 27.

Federal Rule of Civil Procedure 56(f)(1), the Court also GRANTS summary judgment in favor of nonmovant Jo-Ann with respect to FEA's second claim for breach of lease.

## I.  FACTUAL BACKGROUND

This litigation stems from a dispute under the parties' commercial lease (the "Lease"); specifically, the parties disagree on which party was required to upgrade the property's sprinkler system for retail use.  Landlord FEA owns a portion of the University Center Mall in Anchorage, Alaska.[4]  In January 2019, FEA and prospective tenant Jo-Ann executed a non-binding letter of intent (the "Offer Letter") outlining an agreement that Jo-Ann would lease Suite A-1 of the mall (the "Premises") to operate its signature crafts and fabric store.[5]  The parties continued to negotiate over several months, ultimately signing the Lease on August 8, 2019.[6]

The Premises needed significant renovation to function as a Jo-Ann's Fabrics store.[7]  An attachment to the Lease entitled the "Shell Project Matrix" (the "Matrix") outlined each party's construction obligations in anticipation of the store's opening.[8]  Ultimately, FEA was to deliver a "code-compliant shell building" to Jo-Ann by November 4, 2019.[9]  Jo-Ann would then complete the store's internal improvements before

---

[4]  Docket 1-1 at 4.

[5]  Docket 22-14.

[6]  Docket 22-43; Docket 22 at 7.

[7]  The Premises was used as a Natural Pantry grocery store until approximately 2010, after which it was a storage space for FEA's owner, David Cavitt.  *See* Docket 22-4 at 19:2–22; Docket 22-5 at 39:22–40:1, 43:14–24.

[8]  The Matrix originally was included in the January 2019 Offer Letter and later was incorporated into the signed Lease as Exhibit C.  *See* Docket 22-14 at 8; Docket 22-43 at 62–63.

[9]  *See* Docket 27-17 ¶ 1.1; Docket 27-16 ¶ 2.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                           Page 2

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 2 of 24

its opening.[10]  The disputed provision assigns FEA "fire sprinkler system/monitoring – new and/or modifications for building shell compliance with code" before delivering the Premises to Jo-Ann.[11]

The Anchorage Municipal Fire Code requires a building's sprinkler system to deliver a certain amount of water per minute based on that building's fire risk.[12]  Any retail store or space with a "mercantile use" is classified, at minimum, as an "ordinary hazard II" fire risk.[13]  Accordingly, for Jo-Ann to operate its store, the Premise's sprinkler system must comply with code requirements for an "ordinary hazard II" fire risk.[14]  By contrast, a vacant building shell is classified as a "light hazard," meaning that it has a lower fire risk and therefore its sprinkler system has lower requirements for the amount of water expelled per minute.[15]

In the spring of 2019, after the parties executed the Offer Letter and drafted the Matrix, FEA began construction to prepare the Premises for occupancy.[16]  It retained McKinley Fire Protection, LLC ("McKinley Fire") to upgrade the sprinkler system for an "open concept vanilla shell."[17]  McKinley Fire changed the sprinkler heads from pendant to upright and did any other work required to bring the Premises into compliance with the

---

[10] *See* Docket 27-17 ¶ 1.2; Docket 27-16 ¶ 2.
[11] Docket 27-17 ¶ 7.7.
[12] Docket 27-2 at 15:5–15.
[13] Stores with highly flammable goods or with "high-pile storage" may trigger a higher hazard classification.  Docket 27-2 at 16:19–18:21.
[14] The Court refers to the code requirements for "mercantile use" and "retail use" interchangeably.
[15] Docket 27-2 at 16:4–16.
[16] Docket 27-16 ¶ 7.
[17] Docket 22-23; Docket 27-16 ¶ 7.  FEA hired Neeser Construction to complete all other repairs under the Matrix, excluding work on the sprinkler system.  Docket 27 at 8.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                    Page 3

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 3 of 24

fire code for an empty shell.[18]  As such, McKinley Fire's permit for the sprinkler work was based on a "light hazard" use and was conditioned as being "for Core and Shell only."[19] Indeed, in a letter submitted to the Municipal Fire Inspector, FEA stated that,

> [a]s this space is unoccupied at this time, and we do not have a prospective tenant for this space at this time, [we] are working to turn the space into an open concept vanilla shell in preparation for any potential future tenants. As such, we would like to turn the sprinkler heads in this space upwards to maintain fire protection and keep with the open concept.[20]

The scope of this permit was entirely independent from the construction permit that Jo-Ann would later receive for its tenant build-out.[21]  Neither this permit nor FEA's communications with the Municipal Fire Inspector were shared with Jo-Ann.[22]

FEA delivered the Premises to Jo-Ann on November 4, 2019.[23] Representatives from Jo-Ann walked through the space and visually confirmed that the Premises met FEA's requirements under the Matrix.[24]  Jo-Ann conditionally accepted delivery of the Premises pending the completion of smaller, unrelated projects.[25]  That winter, Jo-Ann began its tenant build-out.

On January 20, 2020, Jo-Ann's sprinkler subcontractor informed Jo-Ann that the sprinkler system was not up to code for ordinary hazard II risk, as is required for a retail store, but was instead outfitted for light hazard risk as an open shell.[26]  Jo-Ann informed

---

[18] Docket 27-16 ¶ 7.
[19] Docket 27-15; Docket 22-21 at 1.
[20] Docket 22-23.
[21] Docket 22-21 at 1.
[22] Docket 22 at 9–10; *see also* Docket 22-8 at 118:10–21.
[23] *See* Docket 27-16 ¶ 10.
[24] Docket 22-8 at 118:10–21; Docket 27-16 ¶ 10.
[25] Docket 22-22 at 1.
[26] *See* Docket 22-27.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                     Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                        Page 4

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 4 of 24

FEA of the issue that same day, but the parties did not agree on who was responsible for the renovation.[27]  On February 21, 2020, Jo-Ann sent FEA a notice of default for its failure to deliver a code-compliant building, informing FEA that it would perform the upgrades on FEA's behalf.[28]  In anticipation of the store's opening, Jo-Ann completed repairs of the sprinkler system on May 15, 2020.[29]

Jo-Ann has paid rent since it opened for business on August 13, 2020.[30] However, because the parties dispute whose responsibility it was to bring the sprinkler system up to code for mercantile use, the parties also dispute when rent began to accrue. Under the Lease, Jo-Ann is required to start paying rent on "(i) the 151st day after the Delivery Date, or (ii) the day that Tenant opens for business in the Premises, whichever day first occurs."[31]  The Delivery Date is defined as "the date Landlord delivers the Premises to Tenant with all of the Delivery Requirements satisfied . . . ."[32]  Jo-Ann argues that FEA failed to satisfy its delivery requirements; therefore, rent began to accrue when Jo-Ann opened for business on August 13, 2020.[33]  FEA argues that rent began to accrue on April 3, 2020, which is 151 days after it purportedly satisfactorily delivered the Premises on November 4, 2020.[34]  Under FEA's interpretation of the Lease, Jo-Ann is in arrears for $165,385, or approximately three months of rent.[35]

---

[27]  *See id.*
[28]  Docket 22-35.
[29]  Docket 22 at 12; Docket 22-41 at 1–2.
[30]  Docket 22-1 ¶ 4; Docket 22-37.
[31]  Docket 22-43 Section 2(b).
[32]  *Id.* Section 2(e).
[33]  Docket 22 at 16–17.
[34]  Docket 27 at 30.
[35]  *Id.*

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                      Page 5

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 5 of 24

## II. PROCEDURAL BACKGROUND

On September 23, 2020, FEA filed suit against Jo-Ann in Alaska Superior Court.[36] Jo-Ann removed the suit to this Court on October 26, 2020.[37] FEA's Complaint includes three causes of action: (1) "Declaratory Judgment Action," requesting a declaration that "FEA complied with all of its obligations regarding delivery of the sprinkler system when it provided a sprinkler system that complied with the Exhibit C Matrix and the Landlord's Approved Plans";[38] (2) "Breach of Lease," alleging that Jo-Ann defaulted due to non-payment of rent and breached the implied covenant of good faith and fair dealing;[39] and (3) "Termination of Lease," seeking a ruling that the Lease has terminated due to Jo-Ann's breach.[40]

On October 29, 2020, Jo-Ann filed its Answer, which included a counterclaim against FEA.[41] Jo-Ann also alleges three causes of action: (1) "Breach of the Lease," alleging that FEA failed to meet its obligations under the Lease;[42] (2) "Declaratory Judgment Regarding the Lease," requesting a declaration that FEA "failed to meet its obligations regarding the sprinkler system under the Lease, that the Delivery Date of the Premises is May 15, 2020, and that the Commencement Date [of rent] is August 13, 2020";[43] and (3) "Breach of the Implied Covenant of Good Faith and Fair

---

[36] Docket 1.
[37] Id.
[38] Docket 1-1 at 8.
[39] Id. at 8–9.
[40] Id. at 9.
[41] Docket 7.
[42] Id. at 12.
[43] Id. at 13–14.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                      Page 6

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 6 of 24

Dealing," alleging that FEA breached said covenants by taking actions to deprive Jo-Ann of the bargained-for benefits of the Lease.[44]

On December 22, 2021, Jo-Ann moved for partial summary judgment on FEA's third cause of action for termination of the Lease.[45] Jo-Ann argues that (1) "Jo-Ann is not in breach of the Lease because it has fulfilled its rent obligations," so the Lease cannot be terminated, and (2) even if it were in default, "eviction is not an appropriate remedy under these circumstances."[46]

On January 18, 2022, FEA filed a response in opposition to Jo-Ann's motion[47] and a separate cross-motion for partial summary judgment.[48] FEA interpreted Jo-Ann's motion as seeking a declaration that Jo-Ann was not in breach of the Lease.[49] As such, FEA's cross-motion requests its own declaratory ruling that FEA complied with its obligations under the Lease[50] and its opposition asks the Court to deny Jo-Ann's motion with respect to the "termination of lease" claim.[51]

Jo-Ann filed a reply to its own motion[52] and a separate opposition to FEA's cross-motion.[53] In its opposition, Jo-Ann clarifies that it *only* sought summary judgment on FEA's "termination of lease" claim and asserts that FEA's request for declaratory

---

[44] *Id*. at 14–15.
[45] Docket 22 at 5.
[46] *Id*. at 14.
[47] Docket 25.
[48] Docket 26.
[49] Docket 27 at 4.
[50] Docket 26 at 1.
[51] Docket 27 at 5.
[52] Docket 30.
[53] Docket 31.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*          Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                              Page 7

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 7 of 24

judgment is inappropriate because "a declaration of the parties' responsibilities under the Lease turns on factual determinations of extrinsic evidence outside the four corners of the Lease."[54]  In its reply, FEA reiterates that it seeks summary judgment on the issue of who was responsible under the Lease for providing a sprinkler system that complied with the code standard that applied to retail operations, regardless of Jo-Ann's more narrow request for relief.[55]

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[56]  A material fact is "one that might allow judgment in favor of the party opposing summary judgment."[57]  The party moving for summary judgment has the burden of demonstrating that there is no genuine dispute as to any material fact.[58]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[59]  The nonmoving party's burden "is not a light one."[60]  If the evidence provided by the nonmoving party is "merely colorable" or "not significantly probative," then summary judgment is appropriate.[61]  Further, the nonmoving party cannot rely upon conclusory allegations or denials to create a triable issue; it must set

---

[54] *Id.* at 4.
[55] Docket 32 at 4.
[56] Fed. R. Civ. P. 56(a).
[57] *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1013 (9th Cir. 1994).
[58] *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016).
[59] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).
[60] *Id.*
[61] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                         Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                    Page 8

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 8 of 24

forth specific facts that "require a jury or judge resolve the parties' differing versions of the truth at trial."[62]  All evidence presented by the nonmoving party must be believed for purposes of summary judgment and all justifiable inferences are to be drawn in its favor.[63]  A court's function on summary judgment is not to weigh evidence, but rather to determine if there are genuine issues for trial.[64]

Under Federal Rule of Civil Procedure 56(f), a court may award summary judgment independent of a motion, provided that the party against whom the judgment will be entered was given "notice and a reasonable time to respond."  In particular, "[i]t is generally recognized that a court has the power sua sponte to grant summary judgment to a non-movant when there has been a motion but no cross-motion."[65]  However, in doing so, the court must exercise "great care" to ensure the original movant has had an adequate opportunity to show that its opponent is not entitled to judgment as a matter of law.[66]

## IV.   DISCUSSION

The Court acknowledges the unique procedural posture of this case.  Jo-Ann exclusively moves for summary judgment on FEA's "termination of lease" claim and, in doing so, argues that it has not breached the Lease.[67]  However, Jo-Ann does not move for

---

[62] *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).
[63] *Anderson*, 477 U.S. at 255.
[64] *Id.* at 249.
[65] *Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 494–95 (9th Cir. 2000) (collecting cases); *see also* Charles Alan & Arthur R. Miller, 10A Federal Practice & Procedure § 2720.1 (4th ed.) ("The practice of allowing summary judgment to be entered for the nonmoving party in the absence of a formal cross-motion is appropriate.").
[66] *Kassbaum*, 236 F.3d at 494–95.
[67] *See* Docket 22 at 14.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                                    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                        Page 9

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 9 of 24

summary judgment on either party's breach of contract claim. FEA interprets Jo-Ann's motion as "seek[ing] a ruling that it is . . . not in breach of its obligations to pay rent under the lease," and its memorandum requests summary judgment on this question.[68] But FEA's motion explicitly requests a declaratory judgment and does not appear to move for summary judgment on any breach of contract claim.[69] In any circumstance, both motions require the Court to interpret the parties' obligations under the Lease, which it does below.

As a threshold matter, the Court determines that summary judgment is appropriate on two claims, FEA's termination of lease claim and its breach of contract claim.[70] When sitting in diversity, this Court applies contract principles under Alaska law to interpret a commercial lease.[71] Alaska courts "generally decide the meaning of contractual language as a matter of law," giving primary effect to the instrument itself.[72] Under Alaska law, "the goal of contract interpretation is 'to give effect to the reasonable expectations of the parties.'"[73] While the contract's language "remain[s] the most

_____

[68] Docket 27 at 4.

[69] Docket 26 at 1. The Court notes that Jo-Ann's request for declaratory judgment appears to be duplicative of its breach of contract claim.

[70] While the Court rules sua sponte in favor of Jo-Ann on FEA's breach of contract claim, it is not prepared to decide that FEA did not perform under the Lease given FEA's affirmative defenses and lack of briefing on this issue. Thus, it does not rule on Jo-Ann's counterclaims or FEA's request for a declaration that FEA satisfied its contractual obligations.

[71] See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Rockstad v. Glob. Fin. & Inv. Co., 41 P.3d 583, 586 (Alaska 2002) ("It is well-settled that leases are contracts and should be interpreted according to contract principles."); see also Docket 22-43 Section 41 ("The laws of the state within which the Premises are located govern the validity, performance and enforcement of this Lease without regard to its conflicts of law principles.").

[72] Kimp v. Fire Lake Plaza II, LLC, 484 P.3d 80, 87 (Alaska 2021), reh'g denied (Apr. 28, 2021).

[73] Graham v. Mun. of Anchorage, 446 P.3d 349, 352 (Alaska 2019) (quoting Stepanov v. Homer Elec. Ass'n., 814 P.2d 731, 734 (Alaska 1991)).

Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC          Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                 Page 10

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 10 of 24

important evidence of intention,"[74] the court also may consider "extrinsic evidence of the parties' intent at the time the contract was made."[75] If the contract is unambiguous, the court construes it as a matter of law according to its written terms.[76] "An ambiguity exists only where the disputed terms are reasonably subject to differing interpretation after viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms."[77] "Only when both readings are reasonable does the parties' intent become a question of fact sufficient to overcome a motion for summary judgment."[78] As discussed below, the Court determines that the Lease is unambiguous, and thus it will construe the parties' obligations as a matter of law.

Jo-Ann asserts that factual disputes prevent summary judgment without reference to the standards of Alaska contract law articulated above.[79] Specifically, Jo-Ann does not appear to argue that the Lease is ambiguous,[80] but that its interpretation involves "extrinsic evidence outside the four corners of the Lease," thereby preventing summary

---

[74] *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.*, 778 P.2d 581, 584 (Alaska 1989) (quoting Restatement (Second) of Contracts § 212 comment b)).

[75] *Kimp*, 484 P.3d at 87 (quotation omitted).

[76] *Rockstad*, 41 P.3d at 586 (describing two-step analysis to determine the meaning of lease terms).

[77] *Kimp*, 484 P.3d at 87 (quoting *id.*).

[78] *Id.*; *see also Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-cv-0229-HRH, 2020 WL 1866261, at *2–3 (D. Alaska Apr. 14, 2020) (quoting *Little Susitna Const. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 23 (Alaska 1997)) ("Contract interpretation becomes a task for the trier of fact when the parties present extrinsic evidence to clarify a contract's meaning, when this evidence points toward conflicting interpretations of the contract, and when the contract itself is reasonably susceptible of either meaning.").

[79] *See generally* Docket 31.

[80] Docket 22 at 14 ("There is no factual or legal basis for Landlord's claim that Jo-Ann has breached the Lease for failure to pay its rental obligations . . . .").

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*     Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                       Page 11

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 11 of 24

judgment.[81]  This position misunderstands the role of extrinsic evidence under Alaska contract law.[82]  Further, Jo-Ann's position contradicts its own motion for partial summary judgment.  With robust citation to the record, Jo-Ann's motion requests that the Court dismiss FEA's termination of lease claim because, as a matter of law, "Jo-Ann has fulfilled its rent payment obligations under the Lease."[83]  The Court cannot envision why this question would be ripe for summary judgment under FEA's "termination of lease" claim but not its "breach of lease" claim.  The two claims involve the same analysis regarding the parties' obligations under the Lease.  Therefore, for the reasons below, a summary ruling on both claims is appropriate.

Further, the Court's sua sponte ruling in favor of nonmovant Jo-Ann on FEA's breach of contract claim is appropriate under Rule 56(f).  Because FEA reasonably understood Jo-Ann's motion to request summary judgment on the issue of lease interpretation, it filed a "cross-motion" on the same question.[84]  Thus, FEA was on notice of the need to prove its case, respond to Jo-Ann's arguments, and present any evidence in its favor.  The record is fully developed, and FEA agrees that lease interpretation can be decided as a matter of law.[85]

---

[81] Docket 31 at 4–5.
[82] *See Mahan v. Mahan*, 347 P.3d 91, 94–95 (Alaska 2015).
[83] Docket 22 at 14–22.
[84] Docket 27 at 4.
[85] *Id.*

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                      Page 12

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 12 of 24

## A.    The Matrix Requires FEA to Deliver the Premises with a Sprinkler System that is Code-Compliant for Mercantile Use

Central to this litigation is the Matrix, which was incorporated into the Lease and outlines each party's responsibilities in preparation of Jo-Ann's opening.[86]   The disputed provision, Section 7.7, assigns to FEA "fire sprinkler system/monitoring – new and/or modifications for building shell compliance with code."[87]  Jo-Ann argues that this provision requires the building shell—that is, the empty space delivered to Jo-Ann—to comply with code requirements in connection with Jo-Ann's intended mercantile use.[88]  By contrast, FEA argues that "building shell compliance with code" required it "to deliver a shell space that complied with the code at the time it was delivered (*i.e.*, a light hazard use, with correspondingly lower specifications)."[89]  As such, FEA asserts that it performed its obligations by delivering a space that complied with the code requirements for an empty building shell.[90]

FEA's interpretation isolates Section 7.0 of the Matrix.[91]  Standing alone, the phrase "building shell compliance with code" could suggest compliance with the applicable code for an empty and unoccupied shell.  But such narrow framing ignores the principle of contract law that any lease provision "must be interpreted in light of other relevant lease provisions,"[92] and that the court must "look to the language of the contract as a whole, the

---

[86]    *See* Docket 22-43 at 62–63; Docket 27-17 (enlarged version).
[87]    Docket 27-17 ¶ 7.7.
[88]    Docket 22 at 16–17.
[89]    Docket 27 at 17.
[90]    *Id.* at 7.
[91]    *See id.* at 6.
[92]    *Rockstad v. Glob. Fin. & Inv. Co.*, 41 P.3d 583, 585 (Alaska 2002).

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                                    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                               Page 13

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 13 of 24

## A.    The Matrix Requires FEA to Deliver the Premises with a Sprinkler System that is Code-Compliant for Mercantile Use

Central to this litigation is the Matrix, which was incorporated into the Lease and outlines each party's responsibilities in preparation of Jo-Ann's opening.[86]   The disputed provision, Section 7.7, assigns to FEA "fire sprinkler system/monitoring – new and/or modifications for building shell compliance with code."[87]  Jo-Ann argues that this provision requires the building shell—that is, the empty space delivered to Jo-Ann—to comply with code requirements in connection with Jo-Ann's intended mercantile use.[88]  By contrast, FEA argues that "building shell compliance with code" required it "to deliver a shell space that complied with the code at the time it was delivered (*i.e.*, a light hazard use, with correspondingly lower specifications)."[89]  As such, FEA asserts that it performed its obligations by delivering a space that complied with the code requirements for an empty building shell.[90]

FEA's interpretation isolates Section 7.0 of the Matrix.[91]  Standing alone, the phrase "building shell compliance with code" could suggest compliance with the applicable code for an empty and unoccupied shell.  But such narrow framing ignores the principle of contract law that any lease provision "must be interpreted in light of other relevant lease provisions,"[92] and that the court must "look to the language of the contract as a whole, the

---

[86]    *See* Docket 22-43 at 62–63; Docket 27-17 (enlarged version).
[87]    Docket 27-17 ¶ 7.7.
[88]    Docket 22 at 16–17.
[89]    Docket 27 at 17.
[90]    *Id.* at 7.
[91]    *See id.* at 6.
[92]    *Rockstad v. Glob. Fin. & Inv. Co.*, 41 P.3d 583, 585 (Alaska 2002).

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                                    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                               Page 13

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 13 of 24

objects sought to be accomplished by the contract, [and] the circumstances surrounding its adoption" in order to interpret its meaning.[93]  Taking the Matrix as a whole, including its purpose and the circumstances surrounding its adoption, FEA's interpretation is unreasonable.

First, the Court cannot locate language in the Matrix that obligates Jo-Ann to renovate the building's sprinkler system.  As FEA notes, the Matrix is a detailed document that captures all the work each party was expected to perform to prepare the building shell for Jo-Ann's tenancy.[94]  Given the thoroughness of the Matrix and the sophistication of the parties, the Court concludes that the document captures which party is responsible for ensuring the Premise's sprinkler system complies with fire code.  While FEA argues that the Matrix does not require FEA to provide "any particular level of water pressure for the fire sprinkler, achieve any particular rate of flow for the sprinklers, or provide branch or main lines of any particular size" as is required for mercantile use,[95] the Matrix does not assign Jo-Ann *any* responsibility for the sprinkler system beyond modifying the sprinkler heads.[96]  The exclusive reference to complying with code in relation to the sprinkler system falls to FEA.[97]  FEA's interpretation would assume that the highly detailed Matrix, negotiated by sophisticated parties, is silent as to this major piece of renovation.[98]

---

[93] *Monzingo v. Alaska Air Group, Inc.*, 112 P.3d 655, 660 (Alaska 2005).
[94] Docket 27 at 5–7.
[95] *Id*. at 7.
[96] Jo-Ann's only assigned work regarding the sprinkler system is modifying the sprinkler branch lines and sprinkler heads "due to tenant interior build-out."  Docket 27-17 ¶ 7.6.
[97] *Id*. ¶ 7.7.
[98] If the Matrix were, in fact, silent as to this responsibility, the Lease indicates that the FEA assumes responsibilities for any and all repairs that Jo-Ann is not required to make, including repairs to the plumbing system.  *See* Docket 22-43 Section 18(d).

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*  Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment  Page 14

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 14 of 24

Second, the Matrix was agreed upon by the parties in connection with Jo-Ann's use of the Premises as a retail store.[99] In context, the phrase "building shell" does not signify a tenantless space, and the phrase "compliance with code" cannot be divorced from Jo-Ann's intended use as a retail store. Throughout the Matrix, FEA takes responsibility for substantial work to the exterior and shell of the building in anticipation of Jo-Ann's specific tenancy, whereas Jo-Ann performs any interior improvements and customizations for the store.[100] Accordingly, Section 1.0 of the Matrix outlines the general responsibilities of each party in the build-out: FEA is required to "obtain all applicable shell permits, utility permits, planning and zoning permits; turn over code compliant shell building to tenant/tenant's general contractor,"[101] while Jo-Ann must "obtain all applicable tenant improvement permits, temporary certificate of occupancy or fixturing/ merchandising, final certificate of occupancy, turn over code compliant building."[102] Thus, both parties are responsible for ensuring that the Premises are up to code *for Jo-Ann's occupancy*; the allocation of that responsibility turns on whether the construction relates to the building's shell or its interior improvements.

---

[99] *See* Docket 22-14; Docket 27-16 ¶ 1–4 (attesting that Lease negotiations included several months of discussion about the Matrix).

[100] *Compare* Docket 27-17 ¶ 1.15 (assigning landlord "compliance with all seismic requirements, shell building") *with id.* ¶ 1.16 (assigning tenant "compliance with all seismic requirements, interior building"); *see also* Docket 27 at 9 n.14 ("There is no contention in this case that FEA ever agreed to do a turn-key project: instead, the work was divided between FEA's responsibilities for the core and shell, and Jo-Ann's for its own tenant improvements.").

[101] Docket 27-17 ¶ 1.1.

[102] *Id.* ¶ 1.2.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                     Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                    Page 15
Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 15 of 24

FEA cites deposition testimony that "core and shell" is an industry term for "an empty space before it's built out for a lease"[103] and appears to argue that the Matrix's reference to "building shell" captures this specific meaning.[104] However, here, the phrase "building shell" describes the build-out *for a specific lease* and is used to distinguish the structural construction and the interior improvements.[105] FEA's definition—that "building shell" is confined to a vanilla, tenantless space—is incongruous with its use in the Matrix.[106]

Further, the Matrix makes clear that "all work identified within this matrix to be per current Jo-Ann Stores, Inc. prototype set of plans," that "it is the landlord's responsibility to comply with all current prototype requirements."[107] Given this requirement, "building shell compliance with code" cannot mean the applicable code for an empty, vacant shell space. FEA counters that Jo-Ann's prototype had no bearing on its work, citing an email from Jo-Ann's attorney to FEA's controller that any remaining prototype drawings "only are relevant for Tenant's Work – not your work."[108] In context, however, this email exchange shows the opposite. FEA's controller explains that FEA has not received Jo-Ann's prototype plans; instead, it has "spent the last several months working with Joann's team to evaluate our building and Joann's needs," therefore, FEA

---

[103] Docket 22 at 14 (citing Docket 27-4 at 108:3–24).
[104] See Docket 27 at 9–10, 20–22.
[105] *See generally* Docket 27-17 (referring to "shell building" throughout Matrix).
[106] Indeed, FEA President David Cavitt testified that his decision to upgrade the sprinkler system to comply with the fire code for "core and shell" use was entirely independent of Jo-Ann's Lease, describing it as "general work that I could use as the base to show to any new tenant" regardless of that tenant's intended use of the Premises. Docket 27-16 ¶ 7.
[107] Docket 27-17.
[108] Docket 27 at 6 (citing Docket 27-19 at 2).

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment    Page 16

Case 3:20-cv-00272-JMK    Document 34    Filed 08/30/22    Page 16 of 24

proposes that any reference in the Lease to "prototype plans" be replaced with "Anchorage plans" or similar.[109] This reveals that FEA understood its construction to be in the context of "Jo-Ann's needs" and its "Anchorage plans," as outlined by the Matrix.[110] To deliver a shell space that complied with code "at the time it was delivered" disregards the purpose of the Matrix, which was to prepare the Premises for its use as a Jo-Ann Fabrics store.

Last, FEA argues that Jo-Ann's interpretation of Section 7.7 would require FEA to predicate its construction on a hypothetical, future use of the Premises.[111] FEA explains that a building's fire hazard is defined—in part—by the contents to be stored in the space.[112] As such, Jo-Ann's commodities could have triggered a higher fire code classification.[113] FEA argues that it complied with the fire code for an empty space because "[d]elivering a 'code compliant shell' necessarily requires a code evaluation to be made at the time the shell is delivered and cannot be based on hypothetical future store contents that by definition are not part of an empty shell project."[114] In short, FEA argues that it had no way of knowing the applicable fire code.

---

[109] Docket 27-19 at 2; *see also* Docket 27-18 at 2 (specifying in "Additional Comments" that certain references to "tenant's prototype" be replaced with "mutually agreed upon details and specifications by LLD and tenant").

[110] Docket 27-19 at 2.

[111] Docket 27 at 22.

[112] *Id.* at 18–19.

[113] *Id.* at 21–23; *but see* Docket 32 at 5 (stating as undisputed fact that "[a] retail store like Jo-Ann's is classified as an ordinary hazard II application (requiring .2 gallons per minute over a 1500 sf area)"); Docket 31-6 at 98:14–15 (testifying that "NFPA 13 mandates that a retail area or mercantile area is an ordinary 2 at minimum"). FEA seems to argue that Jo-Ann's, theoretically, could stack highly flammable materials in such a way that the store requires a higher fire code, just as a tenantless shell could require a higher fire code if it was used to store highly flammable materials.

[114] Docket 27 at 22.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                    Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                       Page 17

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 17 of 24

Again, this argument belies the purpose and scope of the Matrix. As discussed, the Matrix explicitly ties the project to Jo-Ann's tenancy and build-out; it is disingenuous to classify its scope as an "empty shell project."[115] Jo-Ann is not arguing that "a shell is not code compliant unless all systems inside could also meet the permitting requirements for non-shell future uses," as FEA claims.[116] Rather, Jo-Ann asserts that the Matrix references the fire code *in context* of Jo-Ann's Lease, which necessitates the building shell's sprinkler system be compliant with mercantile use. Jo-Ann's commodities never risked a higher fire hazard classification,[117] but even if they did, it would not impact FEA's obligation to provide a code-complaint building shell. Jo-Ann acknowledges that it would have been responsible for upgrading the sprinkler system had its commodities, as opposed to the building itself, necessitated a higher fire code than is required for a retail store.[118]

Read in context of the Matrix's purpose and other provisions, Section 7.7 unambiguously obligates FEA to deliver the Premises with a sprinkler system that complied with fire code for its use as a retail store.

## B. The Lease's Other Provisions Support Jo-Ann's Interpretation of the Matrix

The rest of the Lease supports, if not compels, Jo-Ann's interpretation of the Matrix. Section 18 governs the parties' responsibilities for repairs and maintenance of the

---

[115] *See, e.g.,* Docket 27-17 ¶¶ 4.17–4.19 (assigning responsibility for Jo-Ann signage); *id.* ¶ 5.0 (assigning responsibility for interior build-out).
[116] Docket 27 at 23.
[117] Docket 22-21; Docket 27-10.
[118] Docket 31 at 21–22.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*          Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                           Page 18

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 18 of 24

Premises after the Delivery Date.[119]   As with the Matrix, Section 18 generally assigns responsibility to FEA for structural and exterior portions of the Premises, while Jo-Ann maintains the Premise's non-structural interior.[120]

Specifically, Section 18 commits FEA to any repairs and replacements of the sprinkler system and expressly relieves Jo-Ann of such obligations.  FEA warrants that the sprinkler systems "are, and will be upon the Delivery Date, in good working order and repair" and that "there are not, and will not be on the Delivery Date, any violations of any Laws," otherwise FEA is obligated to "promptly correct any code violations subsequently found to exist."[121]   Under Section 18(c), FEA is responsible for:

> repair or replacement of the sprinkler, life safety, or other detection or suppression systems except to the extent such systems are installed as part of Tenant's Work, in which case Tenant shall be solely responsible [for] any such repairs or replacement system.

Similarly, Section 18(h) provides that FEA is responsible:

> for making all alterations of or improvements to the Premises that are required by any Public Entity (which requirement may arise as a result of Tenant seeking approval from a Public Entity for alterations and improvements to the Premises) and that (i) are structural in nature, (ii) relate to the exterior thereof, including the Common Areas, (iii) relate to the sprinkler, utility, or life safety systems therein.

This language envisions the precise circumstance before the Court.   Jo-Ann sought approval from a public entity (the Municipality of Anchorage), who then required an

---

[119]  *See generally* Docket 22-43 at 30–33.
[120]  *See, e.g.,* Docket 22-43 Section 18(a) ("Except as otherwise provided, Tenant will maintain the interior, non-structural portion of the Premises"), Section 18(b) (landlord guaranteeing that all structural portions of the Premises are in good working order), Section 18(c) (tenant "must make all interior nonstructural repairs").
[121]  Docket 22-43 Section 18(b).

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*          Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                    Page 19

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 19 of 24

alteration of the Premises relating to the sprinkler system. In whole, the Lease plainly allocates sprinkler work to FEA and requires FEA to upgrade the building's sprinkler system when necessary to comply with law.[122]

FEA argues that Section 18(h) is superseded by Section 18(c), which excepts FEA from sprinkler repairs "to the extent such systems are installed as part of Tenant's Work."[123] Asserting that these two sections conflict and that Section 18(c) is more specific, FEA argues that Section 18(c) must control.[124] First, the Court notes that a "repair" contemplated by 18(c) is different than an alteration or improvement required by a public entity. Second, Section 18(h) already contemplates a division of labor between tenant and landlord work, noting that:

> Tenant is responsible for making any interior non-structural alterations of or improvements to the Premises that are required by any Public Entity after the Delivery Date, except to the extent that such responsibility is imposed upon Landlord [in the remainder of Section 18(h)].

Last, these provisions only conflict under FEA's interpretation of the Matrix. If, instead, the Matrix requires FEA to bring the building's sprinkler system up to code for Jo-Ann's retail lease, the Matrix and Lease provisions harmonize.

The body of the Lease overwhelmingly supports Jo-Ann's interpretation of the Matrix and independently obligates FEA to alter the sprinkler system when required by a public entity.

---

[122] *See also id.* Section 26(a)(3) (landlord warrants that the Premises, excluding Tenant's Work, and all structural portions of the Shopping Center comply with law).
[123] Docket 27 at 28–29; Docket 32 at 20–21.
[124] Docket 32 at 21.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                     Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                              Page 20

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 20 of 24

**C.    Jo-Ann's Construction Plans do Not Alter the Contract's Written Terms**

While the Matrix and the Lease are the primary evidence of the parties' intent, the Court may consider extrinsic evidence to determine whether its terms are ambiguous.[125]   Here, FEA argues that "Jo-Ann's tenant improvement plans explicitly accept the burden of increasing pressure and flow for the sprinkler system as a Jo-Ann's responsibility."[126]   The plans include general fire protection notes for Jo-Ann's contractor, stating that the "fire protection contractor is responsible to determine if a fire pump will be required, and provide and install as necessary" in accordance with law.[127]   FEA notes that the only reason a fire pump would be installed is to provide enough water pressure for the sprinkler system to comply with fire code, "something that would not have been required if FEA was the party obligated to ensure that the system provided enough water flow meet the ordinary hazard II requirements for retail operations."[128]   As such, FEA argues that Jo-Ann understood its obligation to bring the sprinkler system up to code for mercantile use.

However, the fact that a future contractor would, if appropriate, install a fire pump does not contradict Jo-Ann's interpretation of the Matrix or Lease.  Indeed, Jo-Ann

---

[125]  *See Kimp v. Fire Lake Plaza II, LLC*, 484 P.3d 80, 87 (Alaska 2021), *reh'g denied* (Apr. 28, 2021).  The Court acknowledges that the Parties cite extensively to the record, both as background and as evidence of intent.  Much of this evidence has no bearing on the Parties' intended meaning of the Matrix at the time it was executed.  For example, the communications from the Municipal Fire Inspector regarding FEA's core and shell permit have no relation to the Parties' contractual obligations.  Similarly, third party depositions are not evidence of the Parties' intent at the time the contract was formed.  *See also Estate of Polushkin ex rel. Polushkin v. Maw*, 170 P.3d 162, 169 (Alaska 2007) (post-litigation statements as to subjective intent are not probative extrinsic evidence).

[126]  Docket 25 at 23.

[127]  Docket 27-9 at 28.

[128]  Docket 27 at 25.

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                                                Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                                              Page 21

Case 3:20-cv-00272-JMK    Document 34    Filed 08/30/22    Page 21 of 24

accepts that it would have been required to increase the water pressure had its commodities triggered a higher fire code than that for normal retail use.[129]   Although Jo-Ann's commodities did not, in fact, increase the store's fire hazard risk, the 64-page document reasonably includes this possibility for the contractor.   Accordingly, the tenant improvement plans neither support FEA's interpretation of the contract nor contradict its written terms.

**D.     Jo-Ann is Not in Default of the Lease Due to Non-Payment of Rent**

Jo-Ann is required to start paying rent on the Lease's Commencement Date, which is either "(i) the 151st day after the Delivery Date, or (ii) the day that Tenant opens for business in the Premises, whichever day first occurs."[130]   The Delivery Date is defined as "the date Landlord delivers the Premises to Tenant with all of the Delivery Requirements satisfied,"[131] which in turn requires the Landlord's work to be "Substantially Complete,"[132] *i.e.*, "complete with the exception of minor 'punch list' items that can be completed within 14 days without interfering with the performance of" Tenant's work on the Premises.[133] Under Section 27 of the Lease, Jo-Ann is deemed in default if it "fails to pay Rent on or before the due date and then fails to pay within 10 days after receipt of written notice from Landlord."[134]

---

[129] Docket 31 at 21–22.
[130] Docket 22-43 Section 2(b).
[131] *Id.* Section 2(e).
[132] *Id.* Section 2(f)(1).
[133] *Id.* Section 2(w).
[134] *Id.* Section 27(a)(1).

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*          Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                        Page 22
Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 22 of 24

As discussed, FEA's work included providing a sprinkler system that met fire code requirements for mercantile use. Jo-Ann completed repairs of the sprinkler system on May 15, 2020, rendering that work "substantially complete."[135] Therefore, the Commencement Date is August 13, 2020, when Jo-Ann opened for business. Jo-Ann has paid rent in full since that date.[136] The Court concludes that Jo-Ann is not in default under Section 27 of the Lease due to non-payment of rent.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Jo-Ann's motion for partial summary judgment on FEA's third cause of action ("termination of lease"). The Court sua sponte **GRANTS** summary judgment on FEA's second cause of action ("breach of lease") in favor of nonmovant Jo-Ann. The Court **DENIES** FEA's motion for partial summary judgment in its entirety.

The Court notes that its limited ruling simply interprets the Lease and finds that Jo-Ann is not in default of the Lease. Neither party has moved for a summary ruling on Jo-Ann's counterclaims, and Jo-Ann did not move for summary judgment on FEA's request for a declaration that FEA satisfied its contractual obligations. The Court is not prepared to rule sua sponte on those claims given FEA's affirmative defenses and lack of briefing on those issues. As such, Jo-Ann's counterclaims remain active, as does FEA's first cause of action for declaratory judgment.

---

[135] Docket 7 at 11.
[136] Docket 27 at 30; Docket 22-1 ¶ 4; Docket 22-4 at 150:13-24; Docket 22-5 at 156:17–25.

The Court subsequently will issue an Order Re: Certification of Readiness for Trial. In the Scheduling and Planning Conference Report, the parties stated they wished to consider private mediation or a settlement conference with a judicial officer of this Court. Given the nature of the remaining claims, this Court respectfully encourages the parties to engage in such mediation and will schedule a judicial settlement conference upon request.

IT IS SO ORDERED this 29th day of August, 2022, at Anchorage, Alaska.


*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Furniture Enters. of Alaska, Inc. v. Jo-Ann Stores, LLC*                                            Case No. 3:20-cv-00272-JMK
Order Granting Partial Summary Judgment                                                              Page 24

Case 3:20-cv-00272-JMK   Document 34   Filed 08/30/22   Page 24 of 24